UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KLEIN STEEL SERVICES INC.,

                Plaintiff,

                                          No. 13-cv-14651

v.

                                          HON. Gershwin A. Drain


SIRIUS PROTECTION, LLC, *et al*.,

                Defendant.

_____/


**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT**


**I.    Introduction**

Plaintiff Klein Steel Services, Inc. ("Klein") and Defendant Sirius Protection, LLC ("Sirius") entered into a Non-Exclusive License Agreement ("the agreement") in May of 2010. The agreement stated Klein would use a technology called Flash Processed Steel that Defendant SFP Works, LLC ("SFP") owns. The technology consisted of sixteen patents/patent applications related to Flash Processed Steel. The parties' purpose for the agreement was to produce a commercially viable armored steel product for use in defense applications. In exchange for the use of Sirius' and SFP's technology, Klein would provide an annual licensing fee and royalties on all sales. Defendant abandoned two of the patent applications and altered a third. Plaintiff

concluded these abandonments and alteration prevented it from producing a commercially viable product with Defendants' technology, and terminated the contract.

On November 8, 2013, Plaintiff filed a Complaint against Sirius. Plaintiff's complaint contained four counts: 1) Declaratory Relief; 2) Rescission of the License Agreement for Frustration of Purpose; 3) Restitution under the License Agreement for Frustration of Purpose; and 4) Breach of Contract.[1] Defendants filed a Motion to Dismiss the original Complaint on January 10, 2014. *See* Dkt. #9. In light of SFP's ownership of the sixteen patents/patent applications, Plaintiff filed its First Amended Complaint on January 29, 2014 adding SFP as a Defendant. Upon discovery of SPF's correct business form, LLC, Parties stipulated to the filing of a Second Amended Complaint ("SAC") correctly naming SFP. Defendant filed a Motion to Dismiss the SAC on February 25, 2014.[2] Parties have fully briefed the instant Motion and the Court held a hearing on the Motion on Monday April 28, 2014. For the reasons that follow, the Court will GRANT Defendants' Motion to Dismiss and DISMISS Plaintiff's Complaint in its entirety.

## II.    Factual Background

Defendants offered to license their technology to Plaintiff so it could manufacture armored steel. In May of 2010, Plaintiff paid defendant $250,000 and agreed to pay Defendant Sirius five percent in royalties from the sale of armored steel developed using Defendants' technology and an annual licensing fee. *See* Pl. Ex. A. Over the next three years, Plaintiff attempted to create a commercially viable product. Although it applied its best efforts, Plaintiff could not make a marketable product. On April 29, 2013, Plaintiff wrote Defendant Sirius a

---

[1] Plaintiff, in its Response Brief, withdrew its Breach of Contract Claim.
[2] Defendants' first Motion to Dismiss is now moot.

letter stating its intention to terminate the agreement.  Defendant confirmed its intentions to terminate the agreement on May 14, 2014.  Pl.'s Ex. B.  Plaintiff was able to develop its own technology for producing armored steel that it calls Star Armor Technology.  Plaintiff claims its technology is not an improvement on Defendants' technology.

### III.    Law and Analysis

#### A.  Standard of Review

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rule 12(b)(6) of the Federal Rules of Civil Procedure allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted.  Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atl. Corp. v. Twombly*, the court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).  Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Id.*  To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009).

3

When deciding a motion under Rule 12(b)(6), the court can take into account matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). The court can properly treat documents the defendant attaches to its motion as pleadings if those documents are central to the plaintiff's complaint and its claims. *Werner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).

### B.  Defendants' Motion

Defendants' first argument is that Plaintiff's claim for declaratory relief fails because no justiciable controversy exists between the parties, and the count is insufficiently plead under the patent laws. Ownership of intellectual property was addressed in the contract, and it is an issue of contract law. Plaintiff states it needs a declaratory judgment because it expected Defendant to argue Star Armor is not an improvement in Flash Processed Steel technology. Compl. ¶ 42. A declaration that Star Armor is not an improvement, in the context of the agreement, appears to be a declaration that Star Armor is not intellectual property improperly derived from the Flash Processed Steel Technology. *See Drown v. ASD Computing Ctr.*, 519 F.Supp. 1096, 1110 (S.D. Ohio 1981) (holding courts are entitled to consider legal theories presented by the evidence).

Under the Declaratory Judgment Act, the district courts may " [i]n a case or controversy, within its jurisdiction . . . declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2012). There is no concrete rule on whether a declaratory judgment action meets the Article III case and controversy requirement, however, parties involved must have "adverse legal interests," and there must be an actual dispute that relates to the "legal relations[hip]" between them. *MedImmune, Inc. v Genentech, Inc*., 549 U.S. 118, 127 (2007). The parties' dispute must

4

be the kind that requires the "specific" and conclusive relief that a declaratory judgment offers *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41(1937).  The party seeking the declaratory judgment has the burden of demonstrating an actual case or controversy exists.

In the Sixth Circuit, a patent controversy for the purposes of a declaratory judgment exists when a reasonable person would regard a party's course of action as a charge of infringement and the plaintiff seeking a declaratory judgment regarded the defendant's action as such.  *Robin Prod. Co. v. Tomecek*, 465 F.2d 1193, 1196 (6th Cir. 1972), *see Goodrich-Gulf Chemicals, Inc. v. Phillips Petroleum Co.*, 376 F.2d 1015, 1019 (6th Cir. 1967) (stating plaintiff in declaratory judgment action must show an implied infringement charge, threat of suit or a course of action that implies or threatens suit); *see also Sankyo Corp. v. Nakamura Trading Corp.*, 139 App'x 648, 652 (6th Cir. 2005) (stating *Robin Products* "set[s] out the test for whether a justiciable controversy exists in a declaratory judgment action[s] involving patent infringement[.]").[3]

Plaintiff must demonstrate that a controversy exists under patent law in order for Star Armor Technology not to be an improvement.  Plaintiff seeks a declaration that its armored steel is not an improvement of the Sirius technology.  The agreement, however, does not define what an improvement is.  It does define "KNOW-HOW" as "improvements developed during the terms of [the] agreement that are directly related to the products themselves[.]"  Pl.'s Ex. A at 1.9.  In its claim for declaratory relief, Plaintiff argues the Star Armor technology it created is not an improvement of the Flash Processed Steel technology that belongs to Defendants.  Compl. at

---

[3] Defendant cites the justiciable controversy test from the Court of Appeals for the Federal Circuit.  This test requires plaintiff show an affirmative act by the patentee related to enforce their rights and some meaningful preparation to conduct potentially infringing activity.  *SanDisk Corp. v. STMicroelecs., Inc.,* 480 F.3d 1372, 1380–81 (Fed.Cir.2007).  The Court will apply the Sixth Circuit's test to these facts.

¶ 45.   Article 5.2 of the agreement requires Plaintiff to "assign all technology rights to improvements and related intellectual property to [Defendant]."  Pl.'s Ex A at 5.2.

Other than a claim Defendant made in a footnote of a  motion that is now moot, Defendants have not taken a course of action, such as seeking to force an assignment under Article 5.2, that would cause a reasonable person to infer a charge of infringement.  *See Robin Prod. Co.*, 465 F.2d at 1196.  If anything, Defendants' actions show they have walked away from such a claim because they do not reassert the claim of ownership in this motion.  Plaintiff has met the second part of the test that requires a subjective fear of a claim of infringement.  *See* Compl. at ¶42.  Plaintiff cites to this Court's decision in *QQC, Inc. v Hewlett-Packard Co*., 258 F.Supp.2d 718, for the position that a controversy exists.  That case, however, is distinguishable because it involved a counterclaim that was an actual dispute over a licensing agreement provision concerning the ownership of intellectual property under an agreement very similar to the agreement that is at issue in this case.  *QQC, Inc. v Hewlett-Packard Co*., 258 F.Supp.2d 718, 724-25 (E.D.Mich. 2003).  Defendants have not made such a claim.  Plaintiff only anticipates an infringement claim.  Therefore, there is no actual and concrete dispute needed for a declaratory judgment.  Count 1 of Plaintiff's Complaint for Declaratory Relief is DISMISSED for failure to state a claim because Plaintiff fails to demonstrate an actual charge of infringement.

In Counts 2 and 3 of the Complaint, Plaintiff requests rescission of the agreement, or, in the alternative, restitution to recover its licensing fee of $250,000.  Plaintiff seeks no relief from SFP under these claims.  Pl's Resp. at 16 n.4.  Plaintiff seeks these remedies under the doctrine of frustration of purpose.  A party raising this doctrine must establish the following: 1) their contract is at least partially executory; 2) the frustrated party's purpose in making the contract must have been known to the parties when they entered into the contract; 3) a reasonably

unforeseeable event at the time the contract was made, has frustrated the purpose for entering into the contract through no fault of the frustrated party, and the frustrated party had not assumed the risk of the event's occurrence. *Molnar v. Molnar* 110 Mich. App. 622, 626, 313 N.W.2d 171, 173 (Mich. Ct. 1981).

Under Michigan law, frustration of purpose is not fully developed, particularly to justify rescission of a contract. *Liggett Restaurant Grp. v City of Pontiac et al.*, 260 Mich. App. 127, 134, 676 N.W.2d 633, 637 (Mich. Ct. App. 2003). In *Liggett*, plaintiffs sued the city of Pontiac and its stadium authority. *Id*. at 131. The plaintiffs sought to rescind a concessions contract after the National Football League Team who used the Pontiac Silverdome as its home stadium abandoned it. *Id*. The court of appeals held plaintiffs could not avail themselves of frustration of purpose because the contract had language that assumed the team would not play in the stadium and allocated the risk associated with loss of games. *Id*. at 135-36. The court declined to hold whether rescission was an appropriate remedy because plaintiffs could not establish the elements of frustration of purpose. *Id*. at 136. Michigan law has not decided whether this doctrine justifies rescission. *Id*. In the absence of any affirmative Michigan law on whether frustration of purpose supports rescission, especially of a terminated agreement, the Court will DISMISS Count 2 for rescission of the agreement.

Frustration of purpose allows a party to avoid having to perform under a contract. *Jabero v. Harajli*, No. 243493-246737, 2004 WL 1335896 at *3 (Mich. Ct App. June, 15, 2004). A party can also seek restitution under this doctrine if it has conferred any benefits to the defendant through partial performance. *Id*.

In *Jabero*, Plaintiff sought a return on earnest money it paid to defendant in order to obtain a defendant's gas station franchise as an ongoing business, but the franchisor denied

7

plaintiff application.  *Id*. at *2.  Plaintiff argued the doctrine of frustration of purpose justified a return of his earnest money payment because the denial of the franchise license, although foreseeable, was not his fault.  *Id*.  In fact, the court of appeals and the trial court found defendant's conduct contributed to plaintiff being denied the franchise, found the elements of frustration of purpose were present, and granted plaintiff's request for restitution.  *Id*. at *3.

The case at bar stems from the parties' obligations under the agreement.  The agreement is at least partially executory.  Each party had obligations under the agreement.  Defendant had a duty to deliver the technology.  Plaintiff had a continual obligation to pay an annual license fee and royalties.[4]  Both parties understood Klein's purpose for entering into the agreement, which was to manufacture a commercially viable armored steel product.  It is unclear whether the technology's failure to produce a commercially viable product is Plaintiff's fault.  The abandonment and alteration of the patent applications was a choice Defendants unilaterally made, and obviously not Plaintiff's fault.  Article 8.2 of the agreement is a waiver of liability for losses because of Plaintiff's use of the Defendants' technology.  Defendants state "in no event shall [they] be liable for any incidental, consequential, or special damages of any kind or nature whatsoever, including but not limited to loss of profit [because of Defendants'] licensed products or [Plaintiff's] use or manufacture . . . thereof."  Pl.s Ex. A at 14 at 8.2.  This waiver covers losses arising under any theory.  *Id*.  Plaintiff alleges the abandonments and alteration of the patent applications were unforeseen.  Based on the language in Article 8.2, it appears the parties foresaw the possibility that use or manufacture of Defendants' technology could negatively affect the Plaintiff.  The language of Article 8.2 appears to place the risk of loss on the Plaintiff.

---

[4] Both parties cite cases dealing with licenses agreements and real estate transactions to support their argument.  In those cases whether the contract was executory was not an issue.

Article 5.1 of the agreement gives Plaintiff considerable access to information to allow it to design and make a product.  Pl.'s Ex. A at 5.1.  Denial of a request for documents to help it manufacture a product would make these facts much like those in *Jabero*, but such allegations are not in the complaint or pleadings.  Plaintiff's argument regarding the patent changes asks the Court to hold Defendant liable because the patent application did not result in an identical patent. That occurrence, however, is highly foreseeable.  Any suggestion to the contrary is missing from the pleadings.  In fact, the agreement contemplates patent applications will undergo alterations. Pl.'s Ex. A at 1.10-11.  Risk of loss from manufacture of the Defendants' technology and the alteration of patent applications is addressed in the language of the agreement and the risk of loss appears to be with the Plaintiff.  Therefore, frustration of purpose does not apply, and Plaintiffs Claim for restitution in Count 3 is DISMISSED.

## IV.    Conclusion

For the forgoing reasons, Defendants' Motion is GRANTED and Plaintiff's Complaint is DISMISSED in its entirety.

SO ORDERED.

Dated:  April 29, 2014                                    /s/Gershwin A Drain
                                                         GERSHWIN A. DRAIN
                                                         US DISTRICT COURT